UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>STATE OF WASHINGTON, et al.,<br><br>  Defendants. | Case No. C70-9213<br><br>Sub-proceeding No. 17-sp-02<br><br>ORDER GRANTING MOTIONS TO DISMISS |

## I.     INTRODUCTION

This matter comes before the Court on the Swinomish Indian Tribal Community's, Port Gamble and Jamestown S'Klallam Tribes', and Tulalip Tribe's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) (Dkt. #25), and the Suquamish Indian Tribe's Motion to Dismiss (Dkt. #27), in which the Squaxin Island Tribe and the Puyallup Tribe of Indians have also joined (Dkts. #28 and #29) (hereinafter collectively the "Moving Tribes"). The Muckleshoot Tribe opposes the motion (Dkt. #31), and the Nisqually Indian Tribe has joined in that opposition (Dkt. #33). The Moving Tribes assert that this Court lacks jurisdiction to hear this matter under Paragraph 25(a)(6) of the Order Modifying Paragraph 25 of the Permanent Injunction, entered on August 24, 1993, because the Muckleshoot Tribe's marine usual and accustomed fishing grounds and stations ("U&A") has already been specifically determined, and because the Muckleshoot asserted a contrary position to that advanced now in a prior subproceeding in which it succeeded.

Dkts. #25, #27, #28 and #29. The Muckleshoot oppose the motion on the basis that the marine U&A asserted now has never been determined. Dkt. #31. The Nisqually, while not joining any substantive claims to the U&A, concurs with the procedural arguments made by the Muckleshoot with respect to its ability to invoke Paragraph 26(a)(6) jurisdiction. Dkt. #33. For the reasons discussed herein, the Court agrees with the Moving Tribes, and hereby DISMISSES this subproceeding.

## I. BACKGROUND

This case arises from a Request For Determination ("RFD") brought by the Muckleshoot Indian Tribe, in which it seeks a determination that the Tribe's U&A under the Treaties of Point Elliott and Medicine Creek includes additional locations in the saltwater of Puget Sound not determined in earlier proceedings in this action. Dkt. #3. The Muckleshoot invoke jurisdiction under Paragraph 25(a)(6) of the Order Modifying Paragraph 25 of Permanent Injunction, entered in this action on August 24, 1993, which provides in relevant part that a party "may invoke the continuing jurisdiction of this court in order to determine . . . [t]he location of any of a tribe's usual and accustomed fishing grounds not specifically determined by Final Decision #1. Dkt. #3 at 2.

In 1970 the United States, as trustee for all the treaty tribes, filed suit in the Western District of Washington to obtain an interpretation of the Treaty of Point Elliott and an injunction protecting treaty fishing rights from interference by Washington State. In 1974, Judge Boldt issued extensive findings of fact, conclusions of law, and a permanent injunction. *United States v. Washington*, 384 F. Supp. 312 (W.D. Wash. 1974) ("Boldt Decree"). The Boldt Decree defined the Treaty of Point Elliott's reference to "usual and accustomed grounds and stations" as meaning "every fishing location where members of a tribe customarily fished from time to time at and before treaty times,

however distant from the then usual habitat of the tribe, and whether or not other tribes then also fished in the same waters[.]" *Id.* at 332.

The U&A of the Muckleshoot was described by Judge Boldt in Findings of Fact ("FF") 76 his decision:

> Prior to and during treaty times, the Indian ancestors of the present day Muckleshoot Indians had usual and accustomed fishing places primarily at locations on the upper Puyallup, the Carbon, Stuck, White, Green, Cedar and Black Rivers, the tributaries to these rivers (including Soos Creek, Burns Creek and Newaukum Creek) and Lake Washington, and secondarily in the saltwater of Puget Sound. Villages and weir sites were often located together. [FPTO § 3-53; Ex. USA-20, p. 38; Ex. USA 27b, pp. 7-16; Ex. PL-23, pp. 11-12.]

384 F. Supp. at 312, 367 (W.D. Wash. 1974), FF 76 ("*Decision I*").

On January 11, 1997, the Puyallup Tribe sought a determination that the Muckleshoot had "no adjudicated usual and accustomed fishing grounds and stations in marine waters outside Elliot Bay." Case No. 97-sp-00001RSM (originally brought before Judge Barbara Rothstein), Dkt. #1 at ¶ 1. The Puyallup sought to "bar any fisheries by the Muckleshoot Tribe in the waters surrounding Vashon Island, now known as WDFW Commercial Salmon Management and Catch Reporting Area 11." *Id.* The Puyallup then immediately moved for a preliminary injunction. *Id.*, Dkt. #4. In response to the motion, the Suquamish and the Swinomish Tribes agreed with the Puyallup that the Muckleshoot had no adjudicated U&A around the islands of Central and South Puget Sound, and argued that Judge Boldt's Finding of Fact 76 that Muckleshoot had U&A "secondarily in the saltwater of Puget Sound" was ambiguous and that Judge Boldt never intended to establish Muckleshoot U&A "in the saltwater, far from the upriver haunts of the Muckleshoot forbears." Case No. 97-sp-00001RSM, Dkt. #22 at 2-8. *See also id.*, Dkt. #24. The Puyallup then withdrew their motion.

The Swinomish and Suquamish next filed a cross-request for determination seeking, like the Puyallup, a finding that Muckleshoot marine U&A was "very limited." *Id.*, Dkt. #30. Specifically, the Tribes asserted that the Muckleshoot had no adjudicated U&A "in Washington Marine Catch Reporting Area 10 or waters west and north of Area 10." *Id.*, Dkt. #36 at ¶ 1.

On January 15, 1998, Muckleshoot filed a motion to dismiss the requests for determination, arguing that Judge Boldt had issued an unambiguous finding in his initial decision, and that the Requests for Determination ("RFD") were barred by the doctrine of *res judicata*. *Id.*, Dkt. #47 at 1. Further, Muckleshoot argued that the RFDs did not fall within this Court's continuing jurisdiction. *Id.* Muckleshoot "took issue" with the petitioners' arguments that there was ambiguity with Judge Boldt's term "Puget Sound" as applied to areas 11, 10, 10E, 9, 8 and 8A of Puget Sound. *Id.* at 2. Muckleshoot argued that the Court was limited in its authority to clarify Judge Boldt's findings, and that petitioners were merely seeking a redetermination of the term "Puget Sound" which was unambiguous as to the waters at issue. *Id.* at 2-17. Finally, Muckleshoot argued that the Court did not have continuing jurisdiction under Paragraph 25(a)(6) because the U&A had been specifically determined by Judge Boldt. *Id.* at 17. The Swinomish, Suquamish and Puyallup Tribes responded with a Motion for Summary Judgment, asserting that finding of fact 76 was ambiguous and that the Court had jurisdiction to clarify that Muckleshoot had no U&A beyond Elliot Bay. Dkt. #50.

While those motions were pending, the Ninth Circuit Court of Appeals issued it decision in *Muckleshoot Tribe v. Lummi Indian Tribe*, 141 F.3d 1355 (1998) (*Muckleshoot I*). In that case, relevant to the instant matter, the Ninth Circuit Court of Appeals held:

> As an alternative ground for its decision, the district court relied on the continuing jurisdiction reserved in the decree to "determine the location of a

tribe's usual and accustomed fishing grounds not specifically determined by [*Decision I*]" and "such other matters as the Court may deem appropriate." *Decision I*, 384 F. Supp. at 419. If FF 46 cannot be clarified by adopting Dr. Lane's definition of "present environs of Seattle," the court reasoned, the meaning of the phrase was not "specifically determined" by *Decision I*. The court then proceeded to determine the proper interpretation of the phrase. It concluded that the only authority capable of clarifying the meaning of that phrase is Dr. Lane and based on her testimony, the court made a supplemental finding that the phrase "to the present environs of Seattle" as used in FF 46 describes an area extending no farther south than Mukilteo.

Although jurisdiction to enter supplemental findings exists under the decree, we find the district court erred in entering a supplemental finding here because the court failed to allow all parties to present evidence. *Decision I* acknowledged that "it would be impossible to compile a complete inventory of any tribe's usual and accustomed fishing grounds and stations." 384 F. Supp. at 353. At the same time, subparagraph f of Paragraph 25 reserved continuing jurisdiction to determine "the location of a tribe's usual and accustomed fishing grounds not specifically determined in [*Decision I*]." *Id.* at 419. **Judge Boldt, however, did "specifically determine[]" the location of Lummi's usual and accustomed fishing grounds, albeit using a description that has turned out to be ambiguous. Subparagraph f does not authorize the court to clarify the meaning of terms used in the decree or to resolve an ambiguity with supplemental findings which alter, amend or enlarge upon the description in the decree**. Moreover, the issues presented in subproceeding 86-5 did not comprehend new determinations of locations of usual and accustomed fishing grounds. A proceeding under subparagraph f raises issues beyond those defined in the pretrial order which rejected any submissions from Lummi involving additional research in this subproceeding: "The only matter at issue is the meaning of Judge Boldt's Finding No. 46 and the only relevant evidence is that which was considered by Judge Boldt when he made his finding." Nor do we read subparagraph g – "such other matters as the court may deem appropriate" - to grant blanket authority to make such supplemental findings. Therefore we find that the district court's alternative ground cannot be upheld.

Nevertheless, we recognize that the district court has a genuine controversy before it that must be resolved. We instruct the district court to proceed pursuant to Paragraph 25, subparagraph a to resolve this dispute. Subparagraph a vests continuing jurisdiction to determine "whether or not the actions . . . by any party . . . are in conformity with [*Decision I*] of this injunction." 384 F. Supp. at 419. The RFD, and subsequent proceedings under it, present the court with a dispute over whether the southern portion of the areas in which the Lummi are currently taking fish is in conformity

> with the decree. It will be up to the parties to offer admissible evidence to enable the district court to interpret the decree in specific geographic terms. While evidence that was before Judge Boldt when he made his finding is obviously relevant, there may be other evidence indicative of the contemporary understanding of "the present environs of Seattle."

141 F.3d at 1359-60 (emphasis added).

After additional briefing on how that decision affected Subproceeding 97-1, this Court issued an Order granting Muckleshoot's motion to dismiss in part. Case No. 97-sp-00001RSM, Dkt. #164 at 4. In that Order, the Court found that Finding of Fact 76 was ambiguous in two respects – first, because it was susceptible to more than one interpretation, and second, because the term "secondarily" was ambiguous. *Id.* at 4-5. The Court, relying on *Muckleshoot I*, next ruled that it would consider extra-record evidence to resolve the ambiguity as long as such evidence was relevant to determining Judge Boldt's intention. *Id.* at 6. Finally, the Court determined that it did not have continuing jurisdiction under paragraph a to determine whether the Muckleshoot's actions were in conformity with the injunction with respect to areas beyond Areas 9, 10 and 11, because the Muckleshoot had represented that they did not fish in those areas and did not intend to fish in those areas. Therefore, those areas were no longer at issue. *Id.* at 7.

This Court then addressed cross-motions for summary judgment to determine what Judge Boldt intended by "secondarily in the Puget Sound." *Id.*, Dkt. #164. The Court noted that all parties agreed that Muckleshoot's U&A included Elliot Bay (Area 10A). However, the parties disputed whether Muckleshoot had fishing rights that extended beyond Elliot Bay, if those rights are constrained by the term "secondarily," and whether those rights were limited to the shoreline or whether they included fishing on open water. *Id.*, Dkt. #164 at 9. The Court reviewed the

evidence before Judge Boldt at the time of his decision, and rejected numerous other documents presented by Muckleshoot as unhelpful and unpersuasive. *Id.* at 9-14. The Court then determined:

> In light of the other U&As Judge Boldt delineated, it is inconceivable to the court that he would intend to give the Muckleshoot, an upriver people, a vast saltwater U&A stretching from the Tacoma Narrows to Admiralty Inlet and overlapping the U&As of tribes with a documented history of open water fishing in the same areas. The evidence in the record is that the Muckleshoot's predecessors were upriver Indians with fisheries primarily in the freshwater of the Duwamish drainage who descended to fish at the river's mouth in Elliott Bay. There is no evidence that the Muckleshoot fished in the open marine waters beyond Elliott Bay. Furthermore, there is no evidence that the Muckleshoot possessed the technology to fish on the open waters of Puget Sound. There is, for example, no evidence that the Muckleshoot ever used anything other than the shovelnose river canoe which was unsuitable for extended open water fishing. According to Marion Smith, inland peoples "made and used only [the] shovel-nose type [canoe] [which] was used only on rivers above the tide flats." Ex. 33 at 289. Thus, the court is persuaded that Judge Boldt could not have intended the Muckleshoot's U&A to include the open waters of Puget Sound as Professor Morrill uses that term.
>
> . . .
>
> It is clear from the documents Judge Boldt specifically cited to that the predecessors of the Muckleshoot were a primarily upriver people who may have, from time to time, descended to Elliott Bay to fish and collect shellfish there. The court finds that the evidence before Judge Boldt establishes, at a minimum, that the Muckleshoot's predecessors may have occasionally fished in the open waters of Elliott Bay near the mouth of the Duwamish and gathered shellfish on the shores of Elliott Bay. Based on this evidence, the court concludes that Judge Boldt intended to include those areas (Department of Fisheries Area l0A) in the Muckleshoot U&A. In light of the evidence before Judge Boldt that the Muckleshoot did fish in the open waters of Elliott Bay, the court rejects the Jamestown S'Klallam's argument that the Muckleshoot U&A should be limited to the shoreline.
>
> The court finds, however, that there is no evidence in the record before Judge Boldt, nor is it persuaded by extra-record evidence, that Judge Boldt intended to describe a saltwater U&A any larger than the open waters and shores of Elliott Bay. The court agrees with the Muckleshoot that Judge Boldt's use of a broad term like "Puget Sound" is perplexing in light of the geographic precision he generally used in describing U&As. And it agrees that, as a resident of the Puget Sound area, it is fair to assume that he would not have

> used the terms "Elliott Bay" and "Puget Sound" interchangeably. However, there is no evidence in the record before Judge Boldt that supports a U&A beyond Elliott Bay. In the court's view, Judge Boldt probably did not use a great deal of precision in describing the Muckleshoot's saltwater U&A since the saltwater U&A was clearly not the main focus of FOF 76 and was only of secondary importance in relation to the Muckleshoot's river U&As, which are described in great detail in FOF 76.

Case No. 97-sp-00001, Dkt. #164 at 14-17. The Court then concluded that Muckleshoot's "U&A is limited to Department of Fisheries Area l0A and hereby enjoins respondent from fishing in Department of Fisheries Area 9, 10, and 11." *Id.* at 18.

The Muckleshoot then appealed the matter to the Ninth Circuit Court of Appeals. *Id.*, Dkt. #166. On April 16, 2001, the Court of Appeals affirmed the District Court decision. *Id.*, Dkt. #181.

Muckleshoot have now filed a Request for Determination in which it seeks a determination that the Tribe's U&A under the Treaties of Point Elliott and Medicine Creek includes additional locations in the saltwater of Puget Sound not determined in earlier proceedings in this action.

## II. DISCUSSION

**A. Legal Standard Under Federal Rule of Civil Procedure 12(b)(1)**

Under Federal Rule of Civil Procedure Rule 12(b)(1), a defendant may challenge the plaintiff's jurisdictional allegations in one of two ways: (1) a "facial" attack that accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction, or (2) a "factual" attack that contests the truth of the plaintiff's factual allegations. *Leite v. Crane Co.*, 749 F.3d 1117, 1121-22 (9th Cir. 2014). In this case, the Moving Tribes make a factual attack. In reviewing a factual attack, the Court may consider materials beyond the complaint. *McCarthy v. U.S.*, 850 F.2d 558, 560 (9th Cir. 1988); *see Americopters, LLC v. F.A.A.*,

441 F.3d 726, 732 n.4 (9th Cir. 2006) (When determining the existence of subject matter jurisdiction, "the district court is not confined by the facts contained in the four corners of the complaint-it may consider [other] facts and need not assume the truthfulness of the complaint.").

### B. Muckleshoot's Current RFD

Muckleshoot initiated this subproceeding through an RFD that invoked Paragraph 25(a)(6) of Final Decision # 1, 384 F.Supp. at 419, as modified by this Court's August 23, 1993 Order Modifying Paragraph 25 of Permanent Injunction (Case No. 70-9213, Dkt. #13599). As this Court has previously explained, Paragraph 25(a)(1) provides the Court with jurisdiction to determine whether actions by a party are in conformity with Judge Boldt's findings in Final Decision # 1. While Paragraph 25(a)(1) jurisdiction comes into play where there is potential ambiguity in Judge Boldt's findings, Paragraph 25(a)(6) instead provides jurisdiction to resolve "the location of any of a tribe's usual and accustomed fishing grounds [("U&A")] not specifically determined by Final Decision # 1." Paragraph 25(a)(6) jurisdiction is thus contingent on the Court's finding, or the parties agreeing, that the disputed waters in question were not specifically determined by Judge Boldt. In the instant matter, the parties disagree on whether the disputed waters were specifically determined by Judge Boldt. For the reasons discussed by the moving party, the Court finds that they were.

The specific waters at issue in the current Muckleshoot RFD are: "All of the marine waters of Puget Sound to and including the waters in the vicinity of Gedney (aka Hat) Island and the southern end of Whidbey Island in the north, to and including the marine waters around Anderson, Fox and McNeil Islands in the south, and all of the marine waters of Puget Sound between those

two areas, but excluding Colvos Passage and marine waters within the boundaries of any Indian Reservation." Dkt. #3 at 6. These waters encompass Salmon Management and Catch Reporting Areas 10 and 11, and portions of 8A and 13. *See* Dkt. #25 at 5.[1]

As an initial matter, the Court finds that Judge Boldt specifically determined Muckleshoot U&A in *Decision 1*, and therefore there is no continuing jurisdiction under paragraph 26(a)(6). Indeed, in 97-sp-00001, Muckleshoot argued that this Court "cannot make a supplemental finding under [25(a)(6)] under *Muckleshoot* to determine their fishing rights in areas beyond Areas 9, 10, and 11." Case No 97-sp-00001RSM, Dkt. #81 at 9. The Court then explained:

> The court agrees that *Muckleshoot* forecloses this approach. In *Muckleshoot*, as an alternative holding, this court made a supplemental finding of fact under [subparagraph 25(a)(6)], which reserved continuing jurisdiction to determine "the location of a tribe's usual and accustomed fishing grounds not specifically determined" by Judge Boldt. The Ninth Circuit ruled that this alternative holding could not be upheld. It held that this court did not have jurisdiction under [subparagraph 25(a)(6)] to make a supplemental finding to determine the location of Lummi's U&A because Judge Boldt had already made that determination, albeit using an ambiguous description. And it remanded with specific instructions to proceed under subparagraph [25(a)(1)], which reserves continuing jurisdiction to determine "whether or not the actions . . . by any party . . . are in conformity with" the injunction in *United States v. Washington*.
>
> Here, as in *Muckleshoot*, Judge Boldt has already made a finding of fact determining the location of Muckleshoot's U&A. Although his description may have turned out to be ambiguous, he did make a specific determination. Subparagraph [25(a)(6)] "does not authorize the court to clarify the meaning of terms used in the decree or resolve an ambiguity with supplemental findings which alter, amend or enlarge upon the description in the decree." *Muckleshoot*, 141 F.3d at 1359. Issuing a supplemental finding under subparagraph f defining the scope of Muckleshoot's U&A in Puget Sound

---

[1] Because Muckleshoot's RFD vaguely references "to and including the waters in the vicinity of Gedney Island and the southern end of Whidbey Island," and the waters "around" Anderson, Fox and McNeil Islands, it is not entirely clear which portions of Catch Areas 8A and 13 are implicated, or if any portion of Areas 10A, 11A, 13A, or 13C are implicated.

> would "alter, amend or enlarge upon" Judge Boldt's description, contrary to the Ninth Circuit's holding in Muckleshoot.

Case No 97-sp-00001RSM, Dkt. #81 at 9-10. This Court then granted Muckleshoot's motion to dismiss with respect to areas beyond Areas 9, 10, and 11, and "reserve[d] the question of whether those areas are part of Muckleshoot's U&A" until such time as Muckleshoot "manifested an intent to fish in those areas." *Id.* at p. 11. The Court agrees with the Moving Tribes that it is clear from the prior Order that it was reserving jurisdiction to consider Muckleshoot's U&A in those beyond waters under 25(a)(1), not 25(a)(6). *See id.* at 10-11. Because Muckleshoot invokes only 25(a)(6) jurisdiction, the Court may not proceed on any of its U&A claims.

Further, Muckleshoot is collaterally estopped from relitigating its previously-adjudicated U&A in Areas 9, 10 and 11. Collateral estoppel, also known as issue preclusion, "bars 'successive litigation' of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell,* 553 U.S. 880, 892 (2008), quoting *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001). As noted above, Muckleshoot's U&A in Areas 9, 10, and 11 has been "actually litigated and resolved" by this Court, and a prior judgment has been issued that establishes that Muckleshoot does not have U&A in Areas 9, 10, and 11. Case No 97-sp-00001RSM. That prior judgment has been affirmed by the Ninth Circuit. Thus, Muckleshoot cannot relitigate those areas now.

For those reasons, the Court agrees that it lacks jurisdiction under paragraph 25(a)(6) to review Muckleshoot's current RFD and it must be dismissed.

### III.   CONCLUSION

Having reviewed the Swinomish Indian Tribal Community's, Port Gamble and Jamestown S'Klallam Tribes', Tulalip Tribe's, and the Suquamish Indian Tribe's motions to dismiss (Dkts.

#25 and #27), in which the Squaxin Island Tribe and the Puyallup Tribe of Indians have also joined (Dkts. #28 and #29), the oppositions thereto and replies in support thereof, along with all supporting declarations and exhibits and the remainder of the record, the Court hereby FINDS and ORDERS:

1. The Swinomish Indian Tribal Community's, Port Gamble and Jamestown S'Klallam Tribes', and Tulalip Tribe's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) (Dkt. #25) is GRANTED.

2. The Suquamish Indian Tribe's Motion to Dismiss (Dkt. #27) is GRANTED.

3. Muckleshoot's RFD is DISMISSED and this matter is now CLOSED.

DATED this 24 day of April, 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE